**Scott V. SPILLERS, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 4:13–cv–387 RP–TJS.**

United States District Court, S.D. Iowa, Central Division.

Signed June 2, 2014.

Thomas A. Krause, Schott Mauss & Associates, Des Moines, IA, for Plaintiff.

William C. Purdy, U.S. Attorney's Office, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, District Judge.

Plaintiff, Scott V. Spillers, filed a Complaint in this Court on September 10, 2013, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed an application for benefits December 10, 2010. Tr. at 124–25. Plaintiff, whose date of birth is May 28, 1964, (Tr. at 124) was 48 years old at the time of the hearing on June 5, 2012, before Administrative Law Judge Tom Morris (ALJ). Tr. at 26–61. The ALJ issued a Notice Of Decision—Unfavorable on July 3, 2012. Tr. at 8–21. On July 16, 2013, the Appeals Council declined to review the ALJ's deci-

sion making it the final decision of the Commissioner. Tr. at 1–3. Thereafter, Plaintiff commenced this action.

At the first step of the sequential evaluation, the ALJ found that Plaintiff did not engage in substantial gainful activity after May 22, 2010, the alleged onset of disability date. At the second step, the ALJ found Plaintiff has the following severe impairments: "rule out learning disabilities, psychotic disorder, NOS perhaps due to major depression." The ALJ found that none of these impairments, alone or in combination, were severe enough to qualify for benefits at the third step of the sequential evaluation. Tr. at 13. At the fourth step, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional. limitations: he can perform simple, routine and repetitive work. He cannot pay close attention to detail. He requires a low stress job described as occasional decision making and changes in the work setting. He requires verbal instructions. He cannot perform fast paced work defined as constant activities performed sequentially in a rapid succession. He cannot be required to work on a computer to accomplish job duties. He cannot perform production rate pace work such as an assembly line work but he can perform goal oriented work.

Tr. at 15. The ALJ found that Plaintiff is unable to perform his past relevant work. Tr. at 19. At the fifth step, the ALJ found that Plaintiff is able to do a significant number of jobs, examples of which include industrial cleaner, marker, collator operator, and insert machine operator. Tr. at 20. The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which he applied. Tr. at 21.

## EVIDENCE REVIEW

Plaintiff was admitted to Iowa Lutheran Hospital on May 27, 2010, and discharged June 2, 2010. Tr. at 227–41. Plaintiff was admitted with frantic anxiety over a failed CDL (commercial driver's license) test. During the hospital stay, Plaintiff was under the care of his psychiatrist of more than twelve years, Mark A. Preston, M.D. Dr. Preston noted Plaintiff's history of recurrent paranoid psychosis. Plaintiff, who had been a truck driver, had been involved in a fatal accident during blizzard conditions. Although Plaintiff said that a car crossed the center line into his truck, a police report indicated that Plaintiff's truck tire had been over the center line for some distance. Plaintiff was required to retake his CDL test, but failed the examination. During an office visit, Dr. Preston became concerned that Plaintiff was about to experience a psychotic episode, and admitted him to the hospital. The hospital admission history states that Plaintiff had always been a slower learner and that his mother had always assisted him with test taking. Tr. at 227. On Discharge, Plaintiff was not released to return to work. Plaintiff's medications were Lexapro and Geodon[1] Tr. at 228. Dr. Preston saw Plaintiff in the doctor's office throughout 2010, 2011, and 2012 on a every-other-month, monthly or twice-monthly basis. Tr. at 252–62, 291, & 324–28. During the period immediately after the hospital stay, the doctor was focused on Plaintiff's need to retake his driving test. On July 14, 2010, however, the doctor wrote: "I am not sure he can hold any job right now but I'm not giving up on him." Tr. at 256. On August 4, 2010, the doctor noted that

---

1. An antipsychotic medication. *Sultan v.* *Barnhart,* 368 F.3d 857, 861 (8th Cir.2004)

Plaintiff was doing slightly better, that he was able to smile spontaneously and was not as hopeless as before. Tr. at 255. On August 20, 2010, Dr. Preston noted that Plaintiff was still waiting to hear about his appeal of his drivers license denial. Tr. at 254.

On June 18, 2010, Plaintiff was seen by DeAnn L. Nerem, Psy.D., at the request of Dr. Preston. Tr. at 244–47. The purpose of the examination was "to determine if he has a learning disability that would hinder his ability to successfully pass the written portion of his driver's license test." Plaintiff was required to pass the tests for both his personal and professional driver's licenses. He had twice failed the personal test and was concerned about his CDL. Tr. at 244. On test of intellectual functioning, Plaintiff's verbal comprehension and perceptual organization scores were both 76, placing him in the borderline range. Dr. Nerem wrote:

> Review of the verbal subtests indicated a low average range performance for vocabulary, while his abstract verbal reasoning and general fund of information fell in the borderline range. On the performance tests, his visual-organizational abilities fell in the average range, while his abstract nonverbal reasoning fell in the borderline range. His ability to distinguish essential from nonessential details in pictures fell in the cognitively disabled range.

Tr. at 245. The psychologist recommended that Plaintiff's ability to drive be judged on a road test rather than a written test due to learning disability and memory difficulties. Dr. Nerem recommended that the written portion of the test be administered verbally if possible. Tr. at 246.

Plaintiff's primary care physician is Kim Countryman, D.O. Tr. at 267–86 & 317–22. On December 6, 2010, Dr. Countryman wrote that Plaintiff was unable to drive due to severe anxiety because of the fatal accident Plaintiff had been involved in. The doctor wrote: "I want him to apply for disability." Tr. at 268. On March 14, 2011, Dr. Countryman wrote that Plaintiff "is disabled due to his psychiatric disorder (schizophrenia)." Tr. at 321.

When Plaintiff saw Dr. Preston on January 7, 2011, the doctor opined that Plaintiff is too anxious and indecisive to work. The doctor wrote that he would support Plaintiff's claim of disability. Tr. at 291. On June 11, 2011. Dr. Preston wrote that Plaintiff was prevented from working because of anxiety and dyslexia.

Dr. Preston completed a mental residual functional capacity questionnaire on May 30, 2012. Tr. at 330–34. The doctor listed the following signs and symptoms of Plaintiff's illness: Decreased energy; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; psychomotor agitation or retardation; persistent disturbances of mood or affect; apprehensive expectation; paranoid thinking or inappropriate suspiciousness; emotional withdrawal or isolation; persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation; perceptual or thinking disturbances; easy distractibility; memory impairment—short, intermediate or long term; sleep disturbance; oddities of thought, perception, speech or behavior. Tr. at 331. The doctor was asked to rate Plaintiff's abilities and aptitudes in several domains related to unskilled, semi-skilled and skilled work. The scale was unlimited or very good, limited but satisfactory, seriously limited but not precluded, unable to meet competitive standards, and no useful

ability to function. The following domains were listed as unable to meet competitive standards: remember work-like procedures; understand and remember very short and simple instructions; maintain attention for two hour segment; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal work day and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stresses; understand and remember detailed instructions; carry out detailed instructions; deal with stress of semiskilled and skilled work. Domains checked Seriously limited but not precluded were: carry out very short and simple instructions; ask simple questions or request assistance; set realistic goals or make plans independently of others, interact appropriately with the general public; maintain socially appropriate behavior; use public transportation. The following domains were marked as being limited but satisfactory: maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places. Tr. at 332–33. The doctor opined that if Plaintiff were to have a job, he would likely be absent more than four days per month. The doctor wrote that Plaintiff was not a malingerer. Tr. at 334.

## HEARING TESTIMONY

At the administrative hearing, Plaintiff testified that he had been seeing Dr. Preston for about 12 years. Tr. at 38. Plaintiff said that he had not been hospitalized since he was released from the hospital in 2010, but that he continued to experience anxiety which causes him to be confused and anxious and to be around people. Tr. at 39. Plaintiff said that he has trouble concentrating when trying to read the newspaper or to watch TV. Tr. at 40. Plaintiff said that he also experiences depression. He said his medication, Geodon, makes him drowsy. Tr. at 41. Plaintiff said that he also experiences paranoia, especially when he visits Dr. Countryman— "it just almost makes you feel like they're against me." Tr. at 42. Plaintiff testified that even if he had his drivers license, he does not think he can drive a truck because of his drowsiness and the anxiety. Tr. at 43. He also said that he did not think he could do any of his previous factory jobs because of the confusion he experiences. Tr. at 44.

After Plaintiff testified, the ALJ called Carma Mitchell to testify as a vocational expert. Tr. at 53. The ALJ asked a series of hypothetical questions, the first one being:

Assume a hypothetical individual of the claimant's age and education, with the past jobs described on the exhibit. Further assume this individual can work at all exertional levels with the following limitations. Limited to simple, routine, repetitive tasks; low stress, defined as occasional decision making and changes in the work setting; no close attention to detail. Instructions need to be verbal.

In response, the vocational expert opined that none of Plaintiff's past relevant work could be done with the limitations set forth. Tr. at 54. The vocational expert

identified other jobs which would be possible: Marker—putting tags or labels on items; collator operator; inserting machine operator; and, packaging machine tender. Tr. at 54–55. The vocational expert said that if the hypothetical individual were limited to interaction with a supervisor once per day, than the previously named jobs could still be done. Tr. at 55–56. The third hypothetical person was limited to simple, routine, repetitive tasks; low stress, defined as occasional decision making and changes in the work setting; no close attention to detail; verbal instructions; no fast paced work, defined as constant activity performed sequentially in rapid succession; and no requirement to work with a computer. In response to the third hypothetical question, the vocational expert testified that the previously mentioned jobs could still be performed. Tr. at 56. In response to a fourth hypothetical, the vocational expert testified that if the individual were not able to perform at a production rate pace, jobs such as production machine or packaging machine tender could not be done. Tr. at 56–57. The vocational expert said that the job of industrial cleaner would be able to be performed under the fourth hypothetical. The vocational expert testified that if the individual were off task up to an eighth of a work day, than no work could be performed on a competitive basis. Tr. at 57.

In response to questions from counsel, the vocational expert testified that if the hypothetical individual needed to be re-instructed on job duties every day, than competitive work would not be possible. The vocational expert said that the need to work at a slow pace would preclude work activity. Tr. at 58. She said that if the individual needed to take unscheduled breaks because of anxiety, paranoia or other mental health symptoms, than competitive work is also precluded. Tr. at 58–59. Finally, the vocational expert testified that if an individual were unable to attend work on a regular basis, missing work two days per month, than full time competitive work was precluded. Tr. at 59.

## ALJ'S DECISION

■ In his decision, the ALJ wrote that he rejected Dr. Preston's opinion:

> The Undersigned has accorded little weight to the opinion of Dr. Preston, in that his opinion is inconsistent with treating notes indicating that the claimant experienced anxiety and low self esteem but did not have psychotic symptoms, suicidal ideation and was able to interact with family and friends. The claimant went for daily walks, rode his bike and took care of household chores. The undersigned also notes that the claimant had a long history of maintaining this impairment (with the same medications and treatment) while still maintaining a successful and strong work record.

Tr. at 18.

The ALJ said he disregarded Dr. Countryman's opinion that Plaintiff was disabled because the doctor used the word "schizophrenia" to describe Plaintiff's illness whereas no other doctor diagnosed that disease. Tr. at 18.

The ALJ wrote that he accorded "significant weight" to the opinions of the state agency doctors because he found their opinions consistent with the evidence as a whole. Tr. at 19.

## DISCUSSION

■ We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir.

2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola [v. Astrue]*, 480 F.3d [885], at 886 [ (8th Cir.2007) ] ). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005). *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir.2008.) In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir.1975).

In his brief, Plaintiff argues the ALJ erred by failing to give controlling weight, or great weight, to Dr. Preston's opinion. Plaintiff also argues that the ALJ failed to properly evaluate his complaints using the standards set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir.1984).

 It is well settled law that a treating physician's opinion is given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See, e.g. Halverson v. Astrue*, 600

F.3d 922, 929 (8th Cir.2010), quoting *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir.2009) and 20 C.F.R. § 404.1527(d)(2). However, statements by a treating physician which are conclusory in nature and unsupported by medically acceptable clinical or diagnostic data, are properly discounted by the ALJ. *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir.1986), citing *Brand v. Secretary of Department of HEW*, 623 F.2d 523, 527–28 (8th Cir.1980).

*See also, Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir.2000) in which the Court wrote:

Consistent with the regulations, we have stated that a treating physician's opinion is "normally entitled to great weight," *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir.1999), but we have also cautioned that such an opinion "do[es] not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 785–86 (8th Cir. 1995). Accordingly, we have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments "are supported by better or more thorough medical evidence," *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir.1997), or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions, *see Cruze v. Chater*, 85 F.3d 1320, 1324–25 (8th Cir.1996).

The Court in *Prosch* goes on to state that if the ALJ is going to reject the opinion of the treating physician, good reasons must be given. *Id.* citing 20 C.F.R. § 404.1527(d)(2) and SSR 96–2p.

In the opinion of the Court, Dr. Preston provided the best assessment of Plaintiff's ability to work given the mental illness from which he suffers. Dr. Preston treated Plaintiff for twelve years before Plaintiff was hospitalized on May

27, 2010. From the date of the hospitalization onward, Dr. Preston never actually released Plaintiff to work, Plaintiff's efforts to pass drivers license tests notwithstanding. Even as Plaintiff was attempting to pass the tests, Dr. Preston expressed skepticism that Plaintiff would be able to perform any type of work. Finally, on January 7, 2011, Dr. Preston stated that Plaintiff was too disabled to work and he would support the application for disability.

Dr. Preston's opinion is consistent with another long term medical provider, Dr. Countryman. Although Dr. Countryman used the term "schizophrenia" to describe Plaintiff's impairment, this was no reason to discount her medical opinion that Plaintiff is too disabled to function in the workplace.

In *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir.1995), Judge Posner writing for the Court stated that health professionals, particularly psychiatrists are the experts on mental illness. Here, Dr. Preston is the only treating or examining psychiatrist to opine about Plaintiff's ability to work and it was error to disregard his opinion given the absence of contradictory evidence.

■ The ALJ wrote that he relied on the significant weight he gave to the physicians at the state agency which reviewed the claim at the initial and reconsideration stages of the case. This was error. The Court of Appeals for the Eighth Circuit has held that physicians who have not examined a claimant do not provide substantial evidence that someone is not disabled. *Brock v. Secretary of Health and Human Services*, 791 F.2d 112, 114 (8th Cir.1986) (The statements of physicians who never personally examined the claimant but only reviewed the reports of examining physicians do not constitute substantial evidence on the record as a whole.)

citing *Van Horn v. Heckler*, 717 F.2d 1196, 1198 (8th Cir.1983). *See also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir.2000). Dr. Preston and Dr. Countryman therefore are the only physicians to provide substantial evidence of Plaintiff's ability to work.

The ALJ noted that Plaintiff had been able to work for many years in spite of the medical condition which he now claims prevents him from working. In *Wilder v. Chater*, 64 F.3d at 337–38, Judge Posner wrote: "The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic." In the case at bar, while Plaintiff had been able to drive a truck in the past, it must be noted that there was a serious deterioration of his condition after the accident which resulted in the death of another individual. There is no evidence in this record to support a finding that Plaintiff ever regained the ability to work thereafter.

■ The ALJ wrote: "The claimant went for daily walks, rode his bike and took care of household chores." Such activity is not evidence of the ability to engage in substantial gainful activity. In *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989), Judge Richard S. Arnold wrote: "First, we note that a claimant need not prove she is bed ridden or completely helpless to be found disabled." To find a claimant not disabled at step 5 of the sequential evaluation, it must be shown that the claimant has "the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* citing *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc). The ability to take a walk, ride a bike, or do some household chores, is not

substantial evidence of the ability to function in competitive work.

In *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980), the Court, quoting *Thomas v. Celebrezze,* 331 F.2d 541, 546 (4th Cir. 1965) wrote that "employers are concerned with substantial capacity, psychological stability, and steady attendance." There is no substantial evidence in this record which supports a finding that Plaintiff possess any of these attributes.

For all of the aforementioned reasons, the final decision of the Commissioner is not supported by substantial evidence on the record as a whole and must be reversed.

## CONCLUSION AND DECISION

The Court has considered the evidence which supports, as well as the evidence which detracts from the decision made by the ALJ. After applying the balancing test noted in *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987), and cases cited therein, this Court holds that the final decision of the Commissioner is not supported by substantial evidence on the record as a whole and is based on legal error. This case is reversed and remanded for an award of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406B), and LR 54.2(b) [2]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002);

2. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the gov-

*Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

ernment in the case that the applicant alleges were not substantially justified."