**Barbara J. McDANNEL, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 1–98–CV–90056.

United States District Court,
S.D. Iowa,
Western Division.

Dec. 20, 1999.

Gregory W. Peterson, Des Moines, IA, for plaintiff.

William C. Purdy, Assistant United States Attorney, Des Moines, IA, for defendant.

## ORDER

PRATT, District Judge.

Before the Court is Plaintiff's Application For Attorney Fees Pursuant To 28 U.S.C. § 2412(d)(1)(b) (Equal Access To Justice Act) (hereinafter EAJA). Plaintiff appears by her Attorney Gregory W. Peterson. The Defendant Commissioner appears by Assistant United States Attorney William Purdy. The Government has conceded that its position was not substantially justified in either its administrative or litigation positions. The Government has, however, resisted the amount of Plaintiff's fee request. The Government contends that counsel claimed an excessive number of hours because "[t]his was a 'straightforward' Social Security disability case which did not involve particularly difficult or complex issues." Defendant's October 7, 1999 brief at page 2. Defendant contends counsel could have done his work in 20

hours instead of the claimed 30.9 hours. The issue before the Court, therefore, is a determination of a reasonable fee to be awarded to Plaintiff. A hearing was held on November 12, 1999, following which Plaintiff's attorney submitted a letter to the Court together with attachments. The matter is now considered fully submitted.

## I. BACKGROUND

On September 10, 1999, this Court entered an Order reversing the final administrative determination of the Commissioner of Social Security finding that Plaintiff was not disabled nor entitled to the Supplemental Security Income benefits for which she had applied. On September 23, 1999 Plaintiff's Counsel filed documents denoted "Application For Attorney Fees Pursuant To 28 U.S.C. § 2412(d)(1)(b) (Equal Access to Justice Act)." Attached thereto was a single sheet consisting of fourteen short entries followed by an amount of time entry. Representative of Mr. Peterson's "itemization" is reference to "3/3/98 review file with rep," followed by "4.0." All 14 entries are of a similar nature. In the Application itself, Mr. Peterson makes reference to the underlying action of the Court and states: "That the position of the Commissioner was not substantially justified as noted in the court's order, specifically the evidence does not establish that Plaintiff has past relevant work, medical evidence supports the residual functional capacity of not more than sedintary (sic) work in the medical vocational guidelines mandate a finding of disabled. (See Court's decision pages 6–8)." The Application continues:

> 3. Plaintiff's counsel customarily charges $150.00 for hourly work.
>
> 4. Plaintiff's counsel has considerable experience in social security representation.

.    .    .    .    .

6. That should Plaintiff receive benefits following remand to the Secretary, Plaintiff's attorney will file an application for attorney fees pursuant to 42 U.S.C. § 406(b)(1).

.    .    .    .    .

WHEREFORE, Plaintiff's attorney respectfully requests the court issue an order awarding attorney fees in the sum of $3862.50 pursuant to the Equal Access to Justice Act, 28 U.S.C.S. (sic) Section 2412(d), and directing payment be made directly to Plaintiff's counsel.

It is interesting to note what was not included in Plaintiff's Application. There is no reference to time spent in preparing the fee Application and no reference to any cost of living adjustment to the statutory fee limit. Also absent is any claim for time spent reviewing Plaintiff's notice of award to ensure that past due benefits were correctly calculated.

## II. HEARING

At the hearing, Mr. Peterson said that his "itemization represented a compilation of time slips, in other words, that were kept contemporaneously when the work was being done." *See* Real Time Transcript at page 1, lines 21–23 (hereinafter "Transcript"). When asked about his block billing [1], Mr. Peterson stated, "this is the itemization I have, these are the records I have. This is going to be the only reflection except for my pencil notes which would probably reflect much the same." *See* Transcript at page 2.

## III. INADEQUATE DOCUMENTATION

■ The Equal Access to Justice Act provides for the awarding of "reasonable attorney fees." Obviously, an important component of any fee is the amount of time

---

[1] "The term 'block billing' refers to the time keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. Edmond,* 160 F.3d 1275, 1284 n. 9 (10th Cir.1998) *quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1554 n. 15 (10th Cir.1996) (subsequent history omitted).

reasonably expended by counsel in doing his or her work with respect to the claim on which Plaintiff prevailed. All Attorney Fee Acts, as part of their implementation, require proof of time expended before fees may be awarded. Not only the statutes but case law, as well as the Court's local rules, require adequate itemization. *See* Local Rule 54.2 of The Northern and Southern District of Iowa which states, in relevant part:

> The claimed amount shall be supported by adequate itemization, including the amount of time claimed for any specific task as well as the hourly rate claimed. Expenses shall be separately itemized. The itemization shall also include a separate summary indicating how much total time was expended on each major category of work performed such as drafting pleadings, motions and briefs; legal research; investigation; interviewing; trial preparation and trial.

The Eighth Circuit has stated its displeasure with the kind of block billing that Mr. Peterson has done in this case. In *Miller v. Woodharbor Molding Millworks Inc.*, 174 F.3d 948, 949–50 (8th Cir.1999) the Court wrote:

> Woodharbor also appeals the district court's award of attorney's fees to Miller, contending Miller's claimed fees were inadequately documented. We agree. As the district court stated, Miller "failed to consistently identify the subject matter of the work performed" and repeatedly failed "to specify the substance or content of" billed tasks. The district court noted Miller's generalized billing hindered "the court's ability to conduct a meaningful review of both the fee application and of [Woodharbor's] attendant complaints." If the district court concludes on remand that Miller is still entitled to recover on her hostile work environment claim, the district court should request a more detailed billing before awarding attorney's fees or should consider a percentage reduction for inadequate documentation. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 437 n. 12, 103 S.Ct. 1933, 76

L.Ed.2d 40 (1983); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991).

The documentation submitted by Mr. Peterson is simply inadequate to allow for the meaningful review contemplated by the statutes, rules, and case law concerning attorney fees. Two entries by Mr. Peterson are illustrative of this problem. On his "itemization" he lists "3/22/99 GWP Brief. 6.70." An entry for 3/23/99 is entitled "Finalize and send out brief research explanation cases. 4.00." These entries tell the Court nothing about the legal work being done or about what facts were being marshaled and what law was being briefed.

The reasoning behind the requirement for supportable time entries and a reasonable rate were explained by Chief Justice Burger in his concurrence in *Hensley v. Eckerhart*, 461 U.S. at 440–41, 103 S.Ct. 1933, 76 L.Ed.2d 40:

> I read the Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer must provide detailed records of the time and services for which fees are sought. It would be inconceivable that the prevailing party should not be required to establish at least as much to support a claim under 42 U.S.C. § 1988 as a lawyer would be required to show if his own client challenged the fees. A District Judge may not, in my view, authorize the payment of attorney's fees unless the attorney involved has established by clear and convincing evidence the time and effort claimed and shown that the time expended was necessary to achieve the results obtained.

> A claim for legal services presented by the prevailing party to the losing party pursuant to § 1988 presents quite a different situation from a bill that a lawyer presents to his own client. In the latter case, the attorney and client have presumably built up a relationship of mutual trust and respect; the client has confidence that his lawyer has exercised the appropriate "billing judgment," ante, at

1940, and unless challenged by the client, the billing does not need the kind of extensive documentation necessary for a payment under § 1988. That statute requires the losing party in a civil rights action to bear the cost of his adversary's attorney and there is, of course, no relationship of trust and confidence between the adverse parties. As a result, the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.

■ Mr. Peterson's block billing does not permit the Court to determine a reasonable fee on the basis of the work performed. When the Court is faced with this problem, rather than engage in an hour by hour review, the law permits a Judge, in his or her discretion, to reduce the applicant's hours to reflect a percentage reduction. *See Hensley, supra,* at p. 437 n. 12, 103 S.Ct. 1933.

At the hearing, counsel for the government stated that this application "seemed to be on the outer fringes of what we normally see going through our office and through the offices of general counsel in Kansas City who defend them for us and bring them to our attention." *See* Transcript at page 16, lines 3–9. The award of attorney fees in other cases is relevant to a determination of a reasonable fee in the case at bar. In *Thorne v. Welk,* 197 F.3d 1205 (8th Cir.1999), the Court wrote, at 1213:

> One critical factor the district court should have also considered in a case like this is the attorneys' fees awards in similar cases. *See, e.g., Delph,* 130 F.3d at 358 (attorneys' fees of $88,800 in a racially hostile work environment case); *Shrader v. OMC Aluminum Boat Group, Inc.,* 128 F.3d 1218, 1220 (8th Cir.1997) (attorneys' fees of $44,137.50 in an ADA case); *cf. Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1048 (5th Cir.1998) ($81,000 in attorneys' fees too high considering results obtained in Title VII case); *but see Bridges v. East-*

*man Kodak Co.,* 102 F.3d 56, 58 (2nd Cir.1996), *cert. denied,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997) (affirming Title VII attorneys' fees of $753,202.99). It appears that the court neglected to include this factor in its calculations and as a result reached an attorneys' fees award amount which was too high under the circumstances. When, as here, the amount sought by the prevailing party is far more than one would expect for a case of its complexity and novelty, the court should reference awards in similar cases. While we are not imposing an absolute pay scale for Title VII cases, we do believe that it was an abuse of discretion for the court to overlook this factor.

Mr. Purdy suggested that 15 to 20 hours was reasonable for what he called a "routine case." Absent some proof to the contrary, the Court finds that the expenditure of time mentioned by the Government reasonably reflects time expended in similar Social Security cases wherein fees were awarded by other courts. The Court notes, however, that each case must be determined individually and the relative experience and expertise of counsel should be factored in when determining the amount of time reasonably expended. Legal work is like any other kind of work in that quality work takes time. Identifying the issues and marshaling the facts in a Judicial Review proceeding cannot be made into a precise formula of hours in all cases. There is no usual or customary number of hours that will fit neatly into an application for either EAJA fees or fees under the Social Security Act. However, as the *Thorne* Court said, it is an abuse of discretion not to consider awards made in similar cases.

Counsel for the government also referred to the "*Cotter* factors" that should be used by the Court in arriving at a proper fee determination. The Court assumes that he was referring to *Cotter v. Bowen,* 879 F.2d 359 (8th Cir.1989). As discussed with counsel during the hearing,

that case refers to fee settings under 42 U.S.C. § 406(b)(1) and not 28 U.S.C. § 2412. The Court notes that the EAJA statute contains an hourly rate that is to be used, absent some exceptions that are not applicable here. As Justice Scalia wrote in *Pierce v. Underwood*, 487 U.S. 552, 571, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988):

> The EAJA provides that attorney's fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," but "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). In allowing fees at a rate in excess of the $75 cap (adjusted for inflation), the District Court relied upon some circumstances that arguably come within the single example of a "special factor" described in the statute, "the limited availability of qualified attorneys for the proceedings involved."

■ Congress amended the Act in 1996 to provide for an hourly rate of $125.00 per hour plus a cost of living adjustment. Counsel's reference to "his customary rate" is, therefore, not relevant to the Court's determination of an hourly rate in this case. *See* Peterson Application.

## IV. THE QUALITY OF COUNSEL'S WORK

■ The quality of counsel's work can be considered by the Court in determining a reasonable fee. *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir.1982).

The Court's jurisdiction in the underlying judicial review proceeding was based upon 42 U.S.C. § 405(g). Sitting in an appellate capacity, the Court determines whether Plaintiff is entitled to relief. Nowhere in Plaintiff submissions does counsel cite the standard of review to which this Court, and other reviewing courts, are bound. Indeed, if the Court had relied on counsel's brief for the standard of review, the Commissioner's decision could well

have been affirmed. On page 6 of counsel's March 25, 1999 brief, counsel states the issue was whether the ALJ's decision was supported by "substantial evidence." As then Chief Judge Lay pointed out in *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987): "There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as a whole.'" Had the Court limited its review to a search for substantial evidence supporting the Commissioner's decision, the outcome may well have been different.

As the Court pointed out to counsel at the hearing, and as noted in quoted passages above, counsel's brief contains numerous misspelled words which indicates that he did not spend as much time writing and editing his brief as he claimed. While misspelled words do not render an argument erroneous, they are a distraction and a source of irritation for any reader. One would expect an advocate for disabled people to have enough pride in his work to make sure that the brief is not peppered with misspelled words.

In his Application for EAJA fees, Mr. Peterson states, on the one hand, that he has "considerable experience in social security representation." On the other hand, he refers, in paragraph 6, to "the Secretary." One would expect an experienced representative to know that the agency in question is no longer headed by a cabinet level Secretary, but by the Commissioner of Social Security.

■ Mr. Peterson has also neglected to include, in his EAJA fee application, the time spent (if any) preparing his fee application for submission to the District Court. It has been the law in this circuit for well over ten years that time spent before the District Court preparing and submitting an EAJA application is recoverable by a Plaintiff. *See Kelly v. Bowen*, 862 F.2d 1333, 1334 (8th Cir.1988):

> We think the time spent preparing the EAJA fee application should be compensable under the EAJA because it is "necessary for the preparation of the party's case." 28 U.S.C.

§ 2412(d)(2)(A). Preparation of the EAJA fee application is necessary to bring the matter before the court: counsel cannot recover any attorney's fees unless he or she first prepares an itemized statement of the time spent and subject matter discussed.

The quality of counsel's work has been taken into account in arriving at an appropriate fee.

## V. RELATIONSHIP OF EAJA TO 42 U.S.C. § 406(b)

Plaintiff's Counsel recites, in his Application For Attorney Fees, "that should Plaintiff receive benefits following remand to the Secretary, Plaintiff's attorney will file an application for attorney fees pursuant to 42 U.S.C. § 406(b)(1)." The Court's September 10, 1999 Order stated, in pertinent part: "A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled. Therefore Plaintiff is entitled to disability benefits as of the date of her application for Supplemental Security Income on March 22, 1996." Apparently, Counsel did not understand that Plaintiff was entitled to benefits as a result of the Court's final judgment on September 10, 1999. There was nothing left for the Commissioner to do in this case, barring a timely notice of appeal, except to calculate the benefits and send them to Plaintiff.[2] Counsel's statement in his Application shows either he didn't read the Court's opinion and judgment, or he does not know the law with respect to obtaining a reasonable fee. It is also possible that he was using boilerplate language from a canned application.

42 U.S.C. § 406(b)(1) provides as follows:

(1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

Mr. Peterson's time to file a claim under 42 U.S.C. § 406(b)(1) has expired. *See* Fed.R.Civ.P. 54(d)(2)(B) and LR 54.2. From a review of Mr. Peterson's submissions, it is clear to the Court that he is unaware of the interplay between the Social Security Act and the Equal Access to Justice Act. It is also obvious that he is not cognizant of the purpose of these statutes. The Eighth Circuit explained the purposes behind the EAJA in *Cornella v. Schweiker,* 728 F.2d 978, 981 (8th Cir.1984):

Under federal law, attorneys' fees may be awarded against the United States only if such an award is specifically provided by statute. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The EAJA, effective October 1, 1981, represents another exception to the "American Rule" that litigants pay their own attorneys' fees. *See, e.g., Spencer v. N.L.R.B.,* 712 F.2d 539, 545 (D.C.Cir.1983); *Natural Resources Defense Council v. U.S.E.P.A.,* 703 F.2d 700, 704 (3d Cir.1983). Its primary purpose "is to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action."

In order for the Acts to work properly, however, it is necessary for Plaintiff's law-

---

**2.** The Court is aware that Plaintiff's Application was for Supplemental Security Income benefits under Title XVI of the Act. If the Commissioner's investigation revealed that Plaintiff's income and resources exceed the guidelines, no benefits would be payable. *See* 20 C.F.R. §§ 416.1100 et seq. and 416.1201 et seq. No one, however, has made the Court aware that benefits have been denied because of excess income and resources.

yer to obtain approval of a fee from the funds withheld from the past due benefits [3] and, thereafter, for Plaintiff to be reimbursed with an award of EAJA fees.

When Congress enacted 42 U.S.C. § 406(b)(1) its intent was to insure that the majority of the Social Security funds were paid to deserving claimants, while, at the same time, encouraging representation by attorneys with the award of reasonable attorney fees. The Eleventh Circuit, in *Watford v. Heckler*, 765 F.2d 1562, 1566–67 (11th Cir.1985), had occasion to address the contrasting purposes of these attorney fee acts:

> The purpose of the EAJA was to alleviate economic deterrents to contesting unreasonable government action by shifting the burden of attorneys' fees from the private litigant to the government where the government's position is substantially unjustified. *See* H.R.Rep. No. 96–1418, 96th Cong.2d Sess. (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984. The purposes of 42 U.S.C. § 406(b), on the other hand, were (1) to limit the size of contingency fees payable by the client, Congress believing that contingent fee arrangements in Social Security cases often resulted in an inordinate deprivation of benefits otherwise payable to the client, and (2) to ensure that attorneys would receive some fees for their representation. *See* S.Rep. No. 404, 89th Cong., 1st Sess. 422 (1965), *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 2062. *See also Guthrie v. Schweiker*, 718 F.2d at 107, n. 9; *Watkins v. Harris*, 566 F.Supp. at 495–96; *Ocasio v. Schweiker*, 540 F.Supp. at 1322.

It seems to the Court that there is an inherent tension or conflict regarding these two statutes. The only way for counsel to avoid this conflict is to file dual, or separate, applications for attorney fees if a decision renders his client a prevailing party.[4] In *Talbott v. Bowen*, 832 F.2d 111, 112 (8th Cir.1987), the Court held that the lawyer was entitled to an award of attorney fees equal to the greater amount found to be reimbursable under EAJA or the funds withheld from the claimant's past due benefits. The lesser of the two amounts is to be returned to the client. In *Talbott*, unlike the case at bar, counsel produced a contingent fee contract for the Court's review.

The Court is troubled by counsel's lack of a written agreement with his client. Almost all of the cases involving Social Security fees and EAJA make reference to a written agreement with the disabled person. Mr. Peterson, while initially saying:

> Because the contract between me and the client is for—it's a standard contract that determines what my fee will be subject to court approval, subject to the administrative approval if there's any representation at that level. If possible, I apply for it and in each instance the government would pay those fees and would relieve my client of that burden.

*See* Transcript, page 9, lines 10–16. Later on in the hearing, Mr. Peterson acknowledged that he had no written contract with Plaintiff. "The only agreement that I use in my practice is a general client letter that sets out the obligations and responsibilities, and so on and so forth, and its sent out with the 1696." [5] *See* Transcript page

---

**3.** Because the case at bar is an SSI claim, no fees are withheld from past due benefits. 20 C.F.R. § 416.1520(d)(3). Nevertheless, approval must be obtained for any fee charged either under the Social Security Act, or under the EAJA.

**4.** Since the initial enactment of the EAJA in 1980, there was controversy as to whether or not securing a remand as opposed to a reversal (payment of benefits) entitled one to an EAJA award. *Shalala v. Schaefer*, 509 U.S.

292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) settled the controversy. In discussing the cases involving "prevailing party" under fee shifting statutes Justice Scalia, writing for the Court, held that a remand made pursuant to sentence-four of 42 U.S.C. § 405(g) renders the party a "prevailing party" for purposes of the EAJA.

**5.** A "1696" is a form provided by the Social Security Administration which, when properly executed, contains all the information re-

21, lines 2–5. In his post hearing letter, counsel wrote:

> At hearing and subsequently, I have been unable to find a copy of the letter, and this perplexes me as I do have the 1696 form duly executed by Ms. McDannel on November 12, 1998, returned in response to my letter. For your information and at your request, I enclose a letter typical of what I send with confidential information blocked out.

*See* Peterson letter of November 12, 1999. The attached "typical letter" states:

> Your Social Security Representative, [name blocked out], has asked me to review your file and consider representing you in a District Court Appeal of the Social Security Administrations denial of your benefits. After review of the file I do believe that the decision of the administration may not be supported by substantial evidence. I would be happy to represent you if you so desired. Your representative may have already explained representation before the Court. My representation would be done on a contingency fee basis and the fee would equal one-fourth of the back award allowed, if any. If no award is recovered, you will owe me no fee. If I am successful in reversing the decision of the Administration, I will petition to have the government pay your attorney fees pursuant to a law known as the Equal Access to Justice Act. If that application is successful a portion, and possibly all of your attorney fees will be paid by the government.

*See* attachment to Peterson letter of November 12, 1999. The "client" whom Counsel has apparently never met at this point, is told that "possibly" all of the fees will be paid by the government. The "client" is not told that the "contingency fee basis" is not the law. In *Dowdy v. Bowen*, 636 F.Supp. 591, 593 (W.D.Mo. 1986), Judge Stevens wrote:

The court next considers counsel's requested hourly rate of $100. The court recognizes that attorneys in social security matters, like counsel in this case, often have fee arrangements with their clients. The court, however, is not bound automatically to accept and award the agreed upon rate. *See Lewis v. Secretary of Health and Human Services*, 707 F.2d 246, 248 (6th Cir.1983); *MacDonald v. Weinberger*, 512 F.2d 144, 147 (9th Cir.1975); *McKittrick v. Gardner*, 378 F.2d 872, 873 (4th Cir.1967); *Redden v. Celebrezze*, 370 F.2d 373, 376 (4th Cir.1966).

Furthermore, the court is not bound to award to counsel the full twenty-five percent of past due benefits. *See, e.g., Garber v. Heckler*, 607 F.Supp. 574, 575 (E.D.N.Y.1985). In fact, in the vast majority of cases, a reasonable award will be less than the statutory maximum of twenty-five percent. *See Allen v. Heckler*, 588 F.Supp. 1247, 1250 (W.D.N.Y. 1984).

Counsel for the Plaintiff in this case has not adequately informed his "client" what his fee will be at the conclusion of the case. There is also no evidence that the "client" agreed to employ Mr. Peterson to represent her in the proceedings before this Court. The Iowa Code of Professional Responsibility is instructive in these matters. As stated in EC 2–21:

> As soon as feasible after a lawyer has been employed, it is desirable that the lawyer reach a clear agreement with the client as to the basis of the fee charges to be made. Such a course will not only prevent later misunderstanding but will also work for good relations between the lawyer and the client. It is usually beneficial to reduce to writing the understanding of the parties regarding the fee, **particularly when it is contingent**. A lawyer should be mindful that many persons may have had little or no expe-

---

quired by 20 C.F.R. §§ 404.1707 & 416.1507. The form 1696 authorizes the Social Security Administration to share information with the claimant's representative. The form, however, is not evidence of a contract.

rience with fee charges of lawyers, and for this reason the lawyer should explain fully to such persons the reasons for the particular fee arrangement proposed.

(emphasis added)

The Court is very disturbed by Counsel's "typical" letter. Is it a contract or not? It seems odd, if it is a contract, since it apparently requires no assent by the "client." The law of the United States provides for no contingent fee that the Court is aware it must honor. In fact, all the cases find that 42 U.S.C. § 406(b)(1) says that the Court and even the Commissioner should participate in the fee setting process under the Social Security Act to assure that a reasonable fee is arrived at by the Court. *See, e.g. Burnett v. Heckler,* 756 F.2d 621, 624 (8th Cir.1985). This "typical" letter to a "client," however, is then followed by an apparent practice of not petitioning for a fee unless it is under the EAJA. If the Court is confused by Mr. Peterson's practice, and I concede that I am, one is left to wonder about the "client."

■ . To avoid this problem, a lawyer and the lawyer's client should enter into a written agreement, signed by both parties, which sets forth, in clear and understandable language, the fees that will be charged upon a successful completion of the case. When the lawyer, after obtaining a favorable decision, files dual applications for attorney fees, the Court is in a position to determine a reasonable fee payable from past due benefits and to determine an appropriate EAJA award if the government's position was not reasonable in fact or law. Dual fee applications would likewise provide sufficient compensation to lawyers to vigorously represent the disabled, both on the merits of the claim and during the fee setting phase of the litigation, and not be limited to the statutory award of $125.00 per hour plus COLA provided for in the EAJA. A single fee application under EAJA, is appropriate when a remand for further agency action

on the merits of the claim has been ordered[6]. However, in the situation where a reversal with an order for payment of benefits has been issued by the Court, the lawyer only hurts himself, or herself, by not pursuing a fee under 42 U.S.C. § 406(b)(1) as well as EAJA fees with which to reimburse the client.

■ Plaintiff's Counsel requested that the Commissioner be directed to make the EAJA payment directly to him, rather than to Plaintiff. It was, however, Ms. McDannel who was the victim of an unreasonable governmental action. This was admitted to by the Commissioner when he acknowledged that his denial of her administrative claim or the defense of her judicial review claim was not "substantially justified." As a result Ms. McDannel should be reimbursed any "reasonable attorney fee" she has incurred in prosecuting her claim and in vindicating her rights. The EAJA claim is hers, not her lawyer's. In *Gilbrook v. City of Westminster,* 177 F.3d 839, 875 (9th Cir.1999), *cert. denied,* 120 S.Ct. 614 (Dec. 13, 1999), the Court wrote:

> In short, we think that Judge Thomas' view of federal fee-shifting statutes better reflects the wording of § 1988 and the authorities interpreting that statute. In the absence of a contractual assignment to counsel, § 1988 requires that attorney fee awards be made directly to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client.
>
> Here, Herr and Wilson did not enter into a retainer agreement with intervenor providing that any monies awarded to Plaintiffs as "prevailing parties" under § 1988 would be assigned to intervenor. Accordingly, the district court did not err by awarding attorney fees and costs directly to Herr and Wilson.

6. If the claimant prevails after remand, and the lawyer is awarded fees under § 406(b), the EAJA fees are then returned to the claimant as per *Talbott v. Bowen, supra.*

The Commissioner, therefore, will be directed to make the EAJA check payable to Plaintiff Ms. McDannel.

## VI. DETERMINATION OF AN APPROPRIATE EAJA FEE

What is an appropriate fee, given this record and given the law? It is unclear from the record what, if any benefits have or will be paid to Ms. McDannel. Neither counsel has provided the Court with any information as to whether the reversal actually resulted in a payment of benefits to the Plaintiff and, if so, the amount of the recovery.[7] Furthermore, it is a virtual certainty that the Court will never know the amount of Plaintiff's past due benefits because the time for counsel to file an application for fees under section 406(b) has passed.

 The Court is vested with broad, although not unlimited, discretion in determining the appropriate fee due Plaintiff and her attorney. When, as here, block-billing and other irregularities have appeared in counsel's fee Application, the Court is obligated to conduct a fact intensive review of counsel's claims. The record made in this proceeding shows that Plaintiff counsel has not detailed his work so as to allow for the meaningful review that should be conducted. When block-billing has occurred, most Courts make percentage reduction of fee requests rather than engage in a line by line analysis of Counsel submission. A reasonable hourly rate has been eliminated as an issue in this case since Counsel has not requested a COLA adjustment with respect to the $125.00 entitlement that the EAJA establishes. Counsel's inadequate documentation along with the government's suggest-

ed time amount of 15 to 20 hours make for an inadequate record to set the fee. Based on the quality of Counsel's brief, however, and his failure to provide sufficient itemization as well as his failure to familiarize himself with the applicable fee statutes and his failure to enter into an acceptable contract with his client, it is the Court's judgment that fees in the amount of $750.00 should be allowed pursuant to the Equal Access to Justice Act.

IT IS THEREFORE ORDERED that plaintiff Barbara McDannel is hereby awarded EAJA attorney fees in the amount of seven hundred fifty dollars.

IT IS SO ORDERED.

---

7. In the past this Court has ordered the Secretary to promptly file with the Court a summary of past due benefits payable to the Plaintiff. *See Bass v. Heckler*, 593 F.Supp. 386 (S.D.Iowa 1984). Although *Bass* involved benefits under Title II of the Social Security Act whereas Ms. McDannel's claim is under Title XVI the same rationale would apply. As Chief Judge. Stuart pointed out, the reason

that Congress passed 42 U.S.C. § 406(b)(1) was to create an incentive for lawyers to represent disabled persons. By delaying payment to Plaintiffs' attorney, the Court wrote: "the Secretary creates a disincentive to attorneys who might otherwise represent those, like plaintiffs, whose benefits were wrongfully terminated. This is contrary to the intent of Congress in enacting Section 406(b)(1)."