Dinann Marie DELFS, Plaintiff,

v.

Carolyn W. COLVIN, Acting
Commissioner of Social
Security, Defendant.

No. 4:14–cv–205 RP–SBJ.

United States District Court,
S.D. Iowa,
Central Division.

Signed June 2, 2015.

Niki Adalene Fisher, Fisher Law Office, Des Moines, IA, for Plaintiff.

Mary C. Luxa, U.S. Attorney's Office, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, District Judge.

Plaintiff, Dinann Marie Delfs, filed a Complaint in this Court on May 23, 2014, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

On November 15, 2011, Plaintiff filed an application for Title II benefits. Tr. at 155–61. Plaintiff, whose date of birth is April 5, 1965 (Tr. at 155), was 48 years old (Tr. at 56) at the time of the hearing on July 10, 2013, before Administrative Law Judge David G. Buell (ALJ). Tr. at 49–77. The ALJ issued a Notice Of Decision—Unfavorable on August 12, 2013. Tr. at 27–44. The Appeals Council declined to review the ALJ's decision on March 24, 2014. Tr. at 1–4. Thereafter, Plaintiff commenced this action.

As noted in the statement of facts below, while this case was pending at the Appeals Council, a new report was submitted by Plaintiff's mental health treating sources. The report, although a part of the record, did not appear to be addressed by the Appeals Council or by either of the parties in the current judicial review case. Therefore, the Court scheduled a hearing on May 19, 2015, to ask the parties to address the question of how the Court should review this report in light of *Flynn v. Chater*, 107 F.3d 617 (8th Cir.1997). The parties were given a week to respond via e-mail. On May 22, 2015, the Assistant United States Attorney responded that *Flynn* requires the Court to factor in the November 27, report from Center Associates and to speculate as to how the ALJ would have weighed the report had it been available to him at the hearing. Nevertheless, the Assistant United States Attorney argued that the report does not contain new information—the report simply restates the prior opinion in a more expanded form—and therefore, the Commissioner's final decision should be affirmed. On May 26, 2015, counsel for Plaintiff responded that while the ALJ's decision would have been the same if he had the later report, the final decision of the Commissioner is not supported by the record as a whole, and should be reversed and benefits awarded.

At the first step of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity after April 14, 2011, the alleged disability onset date. Tr. at 33. At the second step, the ALJ found Plaintiff has the following severe impairments: Obesity and anxiety disorder. The ALJ found that Plaintiff's impairments were not severe enough to qualify for benefits at the third step of the sequential evaluation. Tr. at 32. At the fourth step, that ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined

in 20 C.F.R. § 404.1567(b) except she is limited to performing only the most simple, routine, and repetitive types of work. She would be limited to work that does not require any close attention to detail and does not require the exercise of any independent judgment on the job. This is so because the work is so unchanging, repetitive and identical over time that there is no new circumstance that the worker needs to respond to during the course of the workday. She requires, an occupation where all the tasks that might be assigned could be performed without having any interaction at all with the public.

Tr. at 33–34. The ALJ found that Plaintiff is unable to perform any of her past relevant work Tr. at 42. The ALJ found that Plaintiff could perform jobs such as laundry folder, photocopy machine operator and retail marker. Tr. at 43. The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which she applied. Tr. at 44.

Plaintiff's treating primary care physician is James D. Demmel, M.D., a physician at McFarland Clinic in Marshalltown Iowa. In April 2011, Plaintiff suffered an attack of anxiety which forced her to leave her work and seek medical care at the emergency department at Marshalltown Medical & Surgical Center. Plaintiff receives mental health care at Center Associates where she sees Michael Bergman, M.S., Licensed Psychologist, and Sarah Beattie, A.R.N.P., psychiatric mental health nurse practitioner. Plaintiff has been prescribed several medications to control her anxiety and agoraphobia, but she has been unable to tolerate the side effects, so the medications have not restored her health.

Throughout the treatment notes both Dr. Demmel and Mr. Bergman expressed concerns about Plaintiff's ability to work.

For example, On May 10, 2011, Plaintiff brought FMLA (Family and Medical Leave Act) paper work to Dr. Demmel. The Doctor's assessment was "... chronic anxiety with recent exacerbation to the point where patient cannot function." The doctor wrote that he would document that Plaintiff should be off work until her anxiety is resolved. Tr. at 310. On May 16, 2011, Mr. Bergman wrote: "She does, however, wish to return to work but cannot now due to panic." Tr. at 327. June 24, 2011, Mr. Bergman wrote: "She is not able to work presently." Tr. at 325. On July 21, 2011, Dr. Demmel noted that Plaintiff was "still fairly dysfunctional" as a result of panic and anxiety. Tr. at 309. On August 19, 2011, Mr. Bergman noted that Plaintiff seemed quite sincere, and there was "[n]o evidence of any malingering." Mr. Bergman wrote that while Plaintiff had episodes of anxiety in the past from which she had recovered, the current episode appeared to be chronic and that it was accompanied by tingling and muscular weakness. Tr. at 324.

On September 6, 2011, Dr. Demmel wrote that he completed paperwork allowing Plaintiff to be off work until November 1, 2011, but that she might need to consider long-term disability. Tr. at 307–08.

On March 26, 2012, Mr. Bergman wrote: "Ms. Delfs presents today with literally no change in her symptoms. She is having two to three panic attacks per week with associated weakness and limited abilities to complete her activities of daily living for reasons that are poorly understood medically." Tr. at 350.

On April 24, 2012, Plaintiff saw Mr. Bergman. Tr. at 348. Mr. Bergman filled out a Medical Source statement of ability to do work related activities (mental). Tr. at 345–46. Mr. Bergman opined that Plaintiff had a slight impairment in her ability to understand and remember and

carry out short, simple instructions. In addition to a slight restriction in the ability to understand and remember short, simple instructions, Mr. Bergman also indicated a moderate restriction. There was also a slight restriction in the ability to make judgements on simple work related decisions. There was moderate restriction on the ability to understand and remember and carry out detailed instructions. In answer to the question about the medical/clinical findings which support his assessment, Mr. Bergman wrote: "Pt is anxious presently so concentration is poor." He wrote that Plaintiff had two previous episodes of panic. He also wrote that Plaintiff complains of memory problems due to her condition. Mr. Bergman wrote that Plaintiff was too anxious to sustain a 6–8 hour workday, five days a week, due to her mental condition. Tr. at 345. Mr. Bergman opined that Plaintiff had both a moderate and marked inability to interact appropriately with the public. He indicated a moderate inability to interact appropriately with people in authority, and to respond appropriately to pressure and to changes. He wrote that anxiety causes social isolation. Although his handwriting is difficult to read, it appears as though Mr. Bergman wrote that Plaintiff's weakness and somatic complaints affects her ambulation and sustained activity. Anxiety causes social isolation. Sensitivity to medication "affects [illegible] to conventional treatment." Tr. at 346.

In his decision, the ALJ wrote that he considered the opinions of Mr. Bergman expressed on the residual functional capacity form. The ALJ, however, first noted inconsistencies within that document which he found necessary to weigh. Second, the ALJ noted that the checked boxes on the form indicated slight to moderate restrictions in the various domains. The opinions regarding the specific restrictions, stood in contrast to the opinion that Plaintiff is unable to sustain a 6–8 hour workday or a five day workweek. Tr. at 38–39. Third, the ALJ also found that some of the opinions expressed by Mr. Bergman on the form were not supported by the treatment notes. For example, Mr. Bergman's statement that Plaintiff had limitations responding to authority figures, "... there was never mention of such limitation within any of his treatment notes of record. As such, it would appear that the psychologist relied on the claimant's allegations during the course of filling out this statement or simply picked a response when he had never observed or recorded any limits in that behavior." Likewise, the ALJ pointed out that Mr. Bergman's observations about concentration being poor, is contrasted with "... treatment notes [which] indicate the claimant was found to be conversant, comfortable, and had no trouble with memory. His conclusion that her concentration was poor due to anxiety is clearly contrary to all the evidence of his observations." Tr. at 39.

Discussing Plaintiff's credibility, the ALJ noted Plaintiff's noncompliance with prescribed medical care. "While she alleged being fearful of and having adverse side effects to medications, her psychologist noted that these alleged side effects were 'benign.'" The ALJ noted several notations in the medical record where Plaintiff reported that her anxiety was "okay." Tr. at 40. The ALJ noted that Plaintiff did not appear anxious at the hearing and that she was able to listen attentively to questions and provide detailed and relevant responses. The ALJ wrote: "Based on the objective findings of record, the undersigned finds the claimant would be capable of performing work consistent with the assessed residual functional capacity." The ALJ wrote that he found Plaintiff's ability to care for her partner who has multiple sclerosis, incon-

sistent with her testimony concerning disabling fatigue. Tr. at 41.

While the case was pending at the Appeals Council, Plaintiff submitted a report signed by Mr. Bergman and Nurse Beattie. Tr. at 23–24. The report summarized Plaintiff's treatment at Center Associates from her presentation until the report dated November 27, 2013. The report states that Plaintiff's condition has been difficult to treat because she has been unable to tolerate treatment normally prescribed.

> We have noted this [patient] has been "non-compliant" with meds which may not be the best way to represent the dynamic where she has tried our meds but cannot take them. A better way of describing this is the [patient] is med compliant but she is medication sensitive and for the most part, medication intolerant for reasons that we don't understand. There is consistency with this dynamic and the [patient] is not considered to be feigning side effects or intolerability.

Tr. at 23. Nurse Beattie and Mr. Bergman wrote that Plaintiff's condition has remained unchanged from the time she presented herself for treatment. They wrote:

> It is our clinical summary that this patient has not improved since treatment began. In some respects she has worsened. She appears to be dependent upon her father. She has strong agoraphobic symptoms that make it difficult for her to get out of the house. She reports quite a bit of confusion which has worsened, and involuntary present-time and anticipatory related anxiety at moderate if not at times, severe levels daily especially if there is an expectation that she will have to meet someone, go out, or something needs to be done that requires planning, that is out of the ordinary. She has irregularities in her appetite, has daytime fatigue. Her short-term memory appears to be affected by this as she sometimes can't remember what she did on the very day she did it. She has to make accommodations for this concern. If she gets out at all, she shops at stores "off peak" when others aren't around and then slips in and out.

Tr. at 24. In addition to the report, Plaintiff also submitted treatment notes from Primary Health Care, Inc., Marshalltown Clinic, dated December 4, 9, and 12, 2013. Tr. at 7–21.

In its decision, the Appeals Council listed what was considered while making the decision to affirm the ALJ's decision. "In looking at your case, we considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council." Tr. at 2. The Order lists: A brief from Plaintiff's representative dated September 5, 2013, and a letter from claimant dated August 26, 2013. Tr. at 5. The Appeals Council also looked at the medical evidence from Primary Health Care, Inc., which was determined to be from a period of time after the ALJ's decision. No mention was made of the report from Mr. Bergman and Nurse Beattie.

## DISCUSSION

■■ We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola* [*v. Astrue*], 480 F.3d [885] at 886 [ (8th Cir.2007) ] ). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005). *Owen v. Astrue,* 551 F.3d 792, 798 (8th Cir.2008.) In *Brand v. Secretary of Dept. of Health, Education and Welfare,* 623 F.2d 523, 527 (8th Cir.1980), Chief Judge Lay wrote that *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) is "the guideline for the evaluation of the standard of review." In *Universal Camera,* the Court wrote:

> We conclude, therefore, that the Administrative Procedure Act and the Taft–Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they

must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

*Id.,* 340 U.S. at 490, 71 S.Ct. 456. In reviewing disability decisions from the Social Security Administration, the Court sits in an appellate capacity and is responsible for giving the agency decision a scrutinizing analysis. This requires the Court to determine the substantiality of the evidence by determining if the ultimate decision is supported by substantial evidence on the record as a whole. *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987).

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

The most important issue in any disability case which proceeds beyond step three of the sequential evaluation is that of residual functional capacity:

> Probably the most important issue will be the question of [residual functional capacity].... The RFC that must be found ... is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

*McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc).

In the case at bar, the ALJ had the conclusory check list completed by Mr. Bergman on April 24, 2012. Although Mr.

Bergman indicated that Plaintiff was unable to sustain a 6–8 hour work day, five days per week because of her illness, he also indicated slight and moderate restrictions in many of the domains describing various functional abilities.

The report submitted in November 2013, changes the evidentiary landscape dramatically. Here, the treating mental health providers clarify, in a narrative report their opinion regarding Plaintiff's residual functional capacity. Mr. Bergman and Nurse Beattie describe Plaintiff's illness from the time it forced her to stop working until the date of the report. Mr. Bergman and Nurse Beattie explain, in detail the nature of Plaintiff's anxiety and panic and how it prevents her from functioning in a competitive work setting. They also explain, in medical terms, that Plaintiff is not non-compliant with medication which might be able to alleviate her illness, rather Plaintiff is unable to tolerate those medications at prescribed dosages. In the opinion of the Court, this report is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. Unfortunately, this report was not part of the record considered by the ALJ, and it does not appear to have been considered by the Administrative Appeals Judge at the Appeals Council.

■ In *Flynn v. Chater,* 107 F.3d 617, 621–22 (8th Cir.1997), the Court wrote that once it is clear to the reviewing court that the Appeals Council considered newly submitted evidence, the reviewing court's role is "to factor in the new report and determine whether the ALJ's decision was still supported by substantial evidence." "This required the Court to speculate on how the ALJ would have weighed the newly submitted reports had they been available at the initial hearing." *Id.* The *Flynn* Court

cited *Riley v. Shalala,* 18 F.3d 619 (8th Cir.1994).

In *Riley,* the Court wrote that it was clear from the Appeals Council Order that new evidence submitted after the ALJ's decision had been considered. The Appeals Council's decision summarized the content of each new report and gave reasons why those reports did not affect the Appeals Council's conclusion that the administrative law judge's decision was in accord with the weight of the evidence. "Under those circumstances, remand for consideration of the reports in the first instance is inappropriate." *Id.* at 622 citing *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir.1992), and 20 C.F.R. § 404.970(b). "Once it is clear that the Appeals Council has considered newly submitted evidence, . . . our role is limited to deciding whether the [ALJ's] determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Riley* at 622. "Of necessity, that means that we must speculate to some extent on how the [ALJ] would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court." *Id.*

■ In the case at bar, it is not clear to the Court that the Appeals Council considered the report submitted by Mr. Bergman and Nurse Beattie. In fact, it seems likely that the report escaped the notice of the Commissioner. The Appeals Council listed the new evidence which was considered, but does not mention the report dated November 27, 2013 written on the letterhead of Center Associates and signed by Mr. Bergman and Nurse Beattie. Likewise, neither counsel for Plaintiff nor for the Commissioner appeared to have been aware of the report until it was brought to their attention by the Court.

Under the circumstances, it is incumbent upon the Court to reverse and remand the case to the Commissioner so that she has the opportunity to evaluate the opinions expressed by the treating mental health sources and to determine whether or not benefits should be awarded by the Commissioner.

## CONCLUSION AND DECISION

The Court has considered the evidence which supports, as well as the evidence which detracts from the decision made by the ALJ. After applying the balancing test noted in *Gavin v. Heckler*, 811 F.2d at 1199 (8th Cir.1987), and cases cited therein, this Court holds that the final decision of the Commissioner is not supported by substantial evidence on the record as a whole. This case is reversed and remanded further consideration and for a new decision.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b).[1] *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

1. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."