**Larry REUTTER o/b/o Destiny REUTTER, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. A4–02–70.

United States District Court, D. North Dakota, Northwestern Division.

April 4, 2003.

Joanne Hager Ottmar, Ottmar & Ottmar, Jamestown, ND, for Plaintiff.

Lynn C. Jordheim, Jennifer Klemetsrud Puhl, U.S. Attorney's Office, Fargo, ND, for Defendant.

## MEMORANDUM AND ORDER

HOVLAND, Chief Judge.

The Plaintiff seeks judicial review of the decision of the Commissioner of Social Security denying childhood insurance benefits for Destiny Reutter under Sections 202(d) and 216(e) of the Social Security Act, 42 U.S.C. § § 402(d) and 416(e). The application was made by the child's father, Larry Reutter. The claim is premised on the record of Ann Carlson Reutter who was tragically killed in a snowmobile accident on February 22, 1999. Ann was Destiny Reutter's stepmother. For the reasons set forth below, the Court determines that the decision of the Commissioner should be overturned and that there is substantial evidence in the record to support a reversal and an award of childhood insurance benefits.

## I. BACKGROUND

The application for childhood insurance benefits was made on April 11, 1999. (Tr. 54). The claim was denied initially and upon reconsideration. A request for a hearing was made and a hearing before an Administrative Law Judge ["ALJ"] was held on June 29, 2001. (Tr. 25). The ALJ issued his decision finding that Destiny Reutter was ineligible for benefits on August 14, 2001. (Tr. 20). A review by the Appeals Council was requested. The Appeals Council denied the request for review on April 8, 2002. (Tr. 3–4). The current action was filed June 7, 2002, seeking judicial review pursuant to 42 U.S.C. § 405(g).

Ann Carlson and Larry Reutter were married July 24, 1997. (Tr. 16). Each of them brought a child into the marriage from a previous relationship. Jae Carlson was Ann's daughter. Jae was born on May 15, 1996. (Tr. 53). Destiny Reutter was Larry's daughter. Destiny was born on January 9, 1990. (Tr. 15). Ann died in a snowmobile accident on February 22, 1999. (Tr. 16).

After their marriage, Larry and Ann had discussed adoption of the children. (Tr. 43). They contacted several attorneys for information but had not completed the process. (Tr. 109). A few months after Ann's death, Larry adopted Jae. (Tr. 31, 119, 120).

Larry applied to the Social Security Administration for childhood insurance benefits on behalf of both girls. Jae qualified for benefits. The Commissioner found that Destiny did not qualify. (Tr. 84). The reason for the denial was the determination by the Commissioner that Ann had not provided one-half of Destiny's support as required by law. (Tr. 83).

This determination was based upon the fact that Ann had earned less money than Larry during the last year they were married. In 1998, Ann made $17,531 and Larry made $29,642. (Tr. 80). Ann worked as an agronomist. (Tr. 33). After her marriage to Larry, she cut back on her work hours to allow her to spend more time with Destiny and Jae at home and to care for their needs. (Tr. 35). It is undisputed that Ann was a very caring mother and was the primary care-giver for the girls. (Tr. 38). Larry and Ann pooled their resources and shared equally in the payment of household expenses. (Tr. 38, 57). Destiny's birth mother had not made any court-ordered child support in the nine (9) years prior to the administrative hearing. (Tr. 32).

The undisputed evidence in the record reveals that Ann was a wonderful, dedicated homemaker. (Tr. 33). She did all of the cooking, cleaning, laundry, grocery shopping, lawn mowing, and gardening for the family. (Tr. 33–34). Because the tasks of keeping up the home were taking more and more of her time, in the year 1998 Ann and Larry made an intentional decision whereby Ann cut back on her time

at work so that she could spend more time with the children. (Tr. 34). After she cut back on working, Ann would get the children up in the morning and she would be the one home in the afternoon when Destiny would get back from school. (Tr. 35). Ann took the children to all doctors' visits. (Tr. 36). She did the laundry. (Tr. 36). She took care of paying all the bills for the family. Whenever Destiny was ill and could not go to school Ann stayed home with her. (Tr. 36). Ann gardened for the family to provide vegetables and did the yard work. (Tr. 33, 38). Ann did the grocery shopping, meal planning, and preparation. (Tr. 38). In essence, she was the one who provided the day-to-day care for the family.

The undisputed evidence in the record reveals that Ann was home at 3:30 p.m. to be home in time for Destiny's arrival from school (Tr. 35). She would be alone with the children from 3:30 to 6:30 p.m. when she would do housekeeping, laundry, daycare, food preparation, and help with homework. (Tr. 35). Larry is also involved in agriculture and often would have to work weekends. (Tr. 30). Because of this, on about one half of all Saturdays during the year, Ann would have the children alone and would care for them during the day. (Tr. 36).

The Plaintiff asserts that a mechanical calculation of support is erroneous. The Plaintiff argues that the support of Ann should be include more than simply her work income. The Plaintiff also argues that Ann had equitably adopted Destiny. The Defendant contends that its determination of what constitutes one-half support is legally correct.

## II.  STANDARD OF REVIEW

■ The role of the district court in reviewing a decision of the Commissioner is limited. *Wiseman v. Sullivan,* 905 F.2d 1153, 1155 (8th Cir.1990). A *de novo* hearing is not conducted. Instead, the court must determine whether substantial evidence in the record as a whole supports the Commissioner's decision. *Porch v. Chater,* 115 F.3d 567, 571 (8th Cir.1997); *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir.1994). A decision of the Commissioner will be upheld if it is supported by substantial evidence. *Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir.1991). Substantial evidence is that which a reasonable mind might accept as adequate to support the Commissioner's conclusion. *Lawrence v. Chater,* 107 F.3d 674, 676 (8th Cir.1997); *Hutsell v. Sullivan,* 892 F.2d 747, 749 (8th Cir.1989). Review under this standard is more than a rubber stamp or a search for evidence supporting the finding. *Smith v. Heckler,* 735 F.2d 312, 315 (8th Cir.1984). The court must review the entire record and weigh all the evidence which fairly detracts from the ALJ's decision. *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989).

## III.  LEGAL ANALYSIS

### A.  POOLED–FUND METHOD

■ The child of a individual who dies is entitled to childhood insurance benefits if he or she is under the age of 18, unmarried, and dependent upon the individual who died. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350. Stepchildren are included within the definition of a child. 20 C.F.R. § 404.354. The only disputed issue as to Destiny's eligibility for benefits is whether she was dependent upon her stepmother, Ann, for her support. A child is dependent upon a stepparent if the child was receiving one-half of his or her support from the stepparent. 42 U.S.C. § 402(d)(4); 20 C.F.R. § 404.363.[1]

1.  In 1996 Congress amended the Act by striking "was living with or" from the definition of

One-half support is met when the stepparent (1) makes regular contributions to the child's living costs; (2) the contributions equal or exceed one-half of the child's ordinary living costs; and (3) the income from other sources the child has available for support is one-half or less of the child's ordinary living costs. 20 C.F.R. § 404.366(b). Ordinary living costs are defined as "costs for [the child's] food, shelter, routine medical care and similar necessities. A contribution may be in cash, goods, or services." Id. The ALJ did not consider the homemaking services provided by Ann.

In making the determination that Ann did not provide one-half support for Destiny, the Commissioner and the ALJ used what is known as the "pooled-fund method." The pooled-fund method is a rule adopted by the Commissioner that combines the household income and then divides that total by the number of persons living in the household to determine the amount of support required by each member of the household. See Social Security Ruling 84–20a.

The Plaintiff essentially admits that all income was pooled for the benefit of the entire family. No showing has been made that all the household income was not used for support purposes or that it cost more to support some family members than others. Using this mathematical calculation based strictly on earned income, all agree that Ann did not provide one-half of Destiny's support.

■ This method of calculating whether the one-half support test has been satisfied has not been considered and adopted by the Eighth Circuit. However, three other Circuits have considered the method and approved of it. *Pagter v. Massanari*, 250 F.3d 1255, 1261 (9th Cir.2001); *Jepson v.*

*U.S. Dept. of Health and Human Services*, 977 F.2d 911, 914 (4th Cir.1992); *Drombetta v. Secretary of Health and Human Services*, 845 F.2d 607, 609 (6th Cir.1987). However, it should be noted that none of those cases involved an application for childhood insurance benefits. Rather, the cases involved applications·for widow's or husband's benefits. The pooled-fund method creates a rebuttable presumption that all income coming into the household is pooled for the benefit of all persons living in the household and that each member of the household requires the same amount of support to provide for their basic needs. *Drombetta*, 845 F.2d 607, 609.

■ The pooled-fund method looks solely at the financial contribution of the parents as determined by their income tax returns. This method ignores in its entirety any in-kind service(s) provided to the child despite the fact that the regulations recognize that "a contribution may be in cash, goods, or services." 20 C.F.R. § 404.366(b).

Social Security Ruling 84–20a was issued in 1984 and involved an application for husband's insurance benefits. This Ruling was made long before Congress issued PL 104–121 which changed the method of determining a stepchild's dependence. The Ruling was also made in a different context. As such, the applicability of Social Security Ruling 84–20a to a case involving childhood insurance benefits is questionable at best. Further, the pooled-fund method has not been considered and approved by the Eighth Circuit. The Circuits that have considered the pooled-fund method have also not done so in the context of an application for childhood insurance benefits.

when a stepchild is dependent. PL 104–121. This amendment is accurately reflected in 42 U.S.C. § 402(d)(4) but not in 20 C.F.R.

§ 404.363 which still contains the old language.

The pooled-fund method is a simplistic, mathematical formula which removes the necessity of thought from the decision as to whether the one-half support test has been satisfied. The method is plagued with unfairness and completely ignores a more common-sense and realistic, modern approach that places value on the important and significant, non-monetary contributions of a stepmother to her young, school-aged children. The cost of any person's support to a child is difficult to determine with any mathematical precision, but the pooled-fund method is devoid of any reasonable logic or common sense.

The Court concludes that the ALJ erred in using the pooled-fund method without having first assessed and assigned a cash value to the important services rendered by Ann as a homemaker. In this regard, an analogy can be drawn to the definition of "Contributions for Support" which specifically provides that the cash value of services may be considered a contribution to support. 20 C.F.R. § 304.366(a). If the Commissioner seeks to apply the pooled-fund method to childhood insurance benefits cases then a cash value must be assigned to "goods or services." A failure to do so constitutes a failure to properly apply 20 C.F.R. § 404.366(b).

## B. HOMEMAKER'S CONTRIBUTION

■ The Plaintiff argues that the value of Ann's homemaking contributions should be taken into consideration in determining whether she provided one-half support for Destiny. It is suggested that these services be valued at $15,000. See Docket No. 10. If this premise and the $15,000 figure are accepted, Ann would meet the one-half support test. In 1998, Ann earned $17, 531 and Larry earned $29,642. Thus, in order for Ann to have provided one-half support for Destiny, Ann's homemaking services would need to be valued at least $12,111.

As noted, "pooled-fund method" has been approved by three Circuit Courts of Appeal. However, this method simply does not allow for the consideration of important, non-monetary contributions made by a mother to her young children. To fail to recognize the value and importance of the non-monetary contributions and services made by Ann Carlson Reutter would be a travesty. It would send a disparaging message to all mothers/stepmothers who have made the decision to reduce their work hours or who chose to work as full-time mothers at home for the benefit of their entire family.

The Court is persuaded by case law in North Dakota that has consistently recognized the importance of a homemakers's contribution and carefully considers such contributions in divorce proceedings. See *Young v. Young,* 578 N.W.2d 111, 115 (N.D.1998) ("A homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution of a marriage."); *Nelson v. Nelson,* 584 N.W.2d 527, 530 (N.D.1998)("It is well-settled a homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution of a marriage."); *Peterson v. Peterson,* 600 N.W.2d 851, 854–55 (N.D.1999). Although the pooled-fund method is the accepted means of determining the level of support in three other Circuits, the Eighth Circuit has never specifically addressed the issue nor adopted such an approach. There is no question that modern case law, common sense, and a more reasonable and realistic approach to evaluating the valuable, non-monetary services provided by stepparents to their young children warrants that the decision of the Commissioner be overturned. Further, the regulations recognize that a contribution may be in goods or services.

There is substantial evidence in the record to support a finding that the home-

making services provided by Ann are worth at least $12,111. Ann did all the cooking, cleaning, laundry, grocery shopping, lawn mowing, yard work and gardening for the family. Ann handled the family finances. She made sure the children were ready for school and cared for them after school. She took the children to all doctor's visits. Ann planned and prepared all the family's meals. She was Destiny's primary caregiver. The Plaintiff cites a number of professional journals and articles for the proposition that these services should have a value of at least $15,000. See Docket Nos. 10 & 15. Such a value assigned to the non-monetary contributions and services of Ann to the family are likely conservative, but it is clearly sufficient to support a finding of one-half support on her part. The Court believes that a review of the entire record supports the firm conclusion that there is substantial evidence to support a reversal and to justify an award of childhood insurance benefits under the circumstances.

## C. EQUITABLE ADOPTION

■ The Plaintiff also argues that Destiny is entitled to childhood insurance benefits based upon her being the equitably adopted child of Ann Carlson Reutter. It is clear that if an equitable adoption has occurred the child would be eligible for insurance benefits. 20 C.F.R. § 404.359. The regulation states:

You may be eligible for benefits as an equitably adopted child if the insured had agreed to adopt you as his or her child but the adoption did not occur. The agreement to adopt you must be one that would be recognized under State law so that you would be able to inherit a child's share of the insured's personal property if he or she were to die without leaving a will. The agreement must be in whatever form, and you must meet whatever requirements for performance under the agreement, that State law directs. If you apply for child's benefits after the insured's death, the law of the State where the insured had his or her permanent home at the time of his or her death will be followed. If you apply for child's benefits during the insured's life, the law of the State where the insured has his or her permanent home at the time or [sic] your application will be followed.

20 C.F.R. § 404.359

■ North Dakota law recognizes the concept of equitable adoption. *Johnson v. Johnson*, 617 N.W.2d 97, 100 (N.D.2000)(imposing child support obligation on the equitable parent). The North Supreme Court also noted that the normal stepparent-stepchild relationship does not include a contract to adopt the stepchild. 617 N.W.2d 97, 108.

In the present case, there is more than sufficient evidence of an intent to adopt. Ann and Larry had discussed adoption and had contacted two attorneys regarding adoption but they had not yet begun the formal process before Ann's untimely death in February 1999. Larry did adopt Jae after Ann's death. He asserts they would have gone ahead with the adoption but for Ann's death. There is sufficient evidence in the record of an intent to adopt and the Court believes that an equitable adoption of Destiny had occurred that was recognizable under North Dakota law and fits within the parameters of 20 C.F.R. § 404.359.

It is clear from the evidence in the record that Ann Carlson Reutter was a parent who was very loving and supportive of both of the young girls in the Reutter household. She more than fulfilled her parental role and the Court concludes that she provided at least one-half of Destiny's support. The Court has no doubt that Ann was a stepmother who loved Destiny. On the record before it, the Court con-

cludes that as a matter of law an equitable adoption existed that would trigger an award of insurance benefits.

### D. EQUAL PROTECTION CLAIM

The Plaintiff suggests that 42 U.S.C. § 402(d)(4) as revised by PL 104–121 violates the Equal protection Clause of the Constitution. The Plaintiff seems to argue that because women generally make less money than men the law treats the stepchildren of women less favorably than the stepchildren of men. The argument is not well developed and the classes are ill-defined. The Plaintiff cites no case law in support of this argument and devotes little argument to it. As the North Dakota Supreme Court has repeatedly noted, a party should "bring up the heavy artillery" when making a constitutional claim or forego the claim altogether. *Grand Forks Professional Baseball Inc. v. North Dakota Workers Comp. Bureau,* 654 N.W.2d 426, 431 (N.D.2002).

Congress has wide but not unlimited latitude in creating classifications for the allocation of Social Security benefits. *Califano v. Goldfarb,* 430 U.S. 199, 210, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (finding provision of Act that automatically granted death benefits to widows while requiring widowers to show dependency violated the equal protection clause). The challenged provision of law in the present case does not create gender classifications as the provision in Califano did.

### IV. CONCLUSION

The Court determines that the decision of the Commissioner should be overturned and that there is substantial evidence in the record to support a reversal and an award of childhood insurance benefits. The Court concludes that Destiny Reutter was a child who was dependent upon her stepparent (Ann) and who received one-half of her support from her deceased stepparent as required by law. The Court

further concludes that an equitable adoption of Destiny had occurred that was recognizable under North Dakota law. The Plaintiff's Motion for Summary Judgment (Docket No. 8) is GRANTED and the Defendant's Motion for Summary Judgment (Docket No. 11) is DENIED. The decision of the Commissioner is reversed and the remanded to the Commissioner for an award of childhood insurance benefits.

IT IS SO ORDERED.