# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 03-2784
No. 03-2849

—————

Larry Reutter,                                          *
on behalf of Destiny Reutter,                           *
                                                        *
      Plaintiff-Appellee/                            *
      Cross-Appellant,                               *
                                                        *    Appeals from the United States
   v.                                                 *    District Court for the
                                                        *    District of North Dakota.
Jo Anne B. Barnhart,                                    *
Commissioner of Social Security,                        *
                                                        *
      Defendant-Appellant/                           *
      Cross-Appellee.                                *

—————

Submitted:  May 10, 2004
Filed:  June 16, 2004

—————

Before MURPHY and FAGG, Circuit Judges, and GOLDBERG,[1] Judge.

—————

MURPHY, Circuit Judge.

     Larry Reutter sought Social Security benefits for his daughter Destiny after the death of his wife, Ann Carlson.  An administrative law judge (ALJ) denied the claim, finding that Carlson had neither contributed half of Destiny's support nor equitably

—————

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

adopted her, and the Appeals Council denied review. Reutter then filed this action seeking judicial review, and the district court concluded that Destiny was entitled to child's insurance benefits but rejected the claim that the Social Security Act unconstitutionally discriminates on the basis of gender. Both parties appeal, and we affirm in part and reverse in part.

Under the Social Security Act each dependent child of a deceased person is entitled to monthly payments equal to three fourths of the deceased's primary social security insurance benefit. 42 U.S.C. § 402(d)(2). A child is deemed dependent on a natural or adoptive parent with whom she lives or from whom she received half of her support during the last twelve months of the parent's life. 42 U.S.C. § 402(d)(3); 20 C.F.R. § 404.366(b). A child is deemed dependent on a stepparent only if she was receiving at least one half support from the deceased stepparent during the last twelve months of her life. 42 U.S.C. § 402(d)(4); 20 C.F.R. § 404.366(b).

Larry Reutter and Ann Carlson married in 1997. Each brought a daughter into the marriage: Destiny Reutter who was born in 1990 and Jae Carlson who was born in 1996. Neither parent adopted the other's child during Carlson's lifetime. Carlson was an agronomist who had worked full time in 1997 when she earned $18,920. She received a substantial pay raise in 1998 which allowed her to earn $17,531 even though she worked only three fourths time. During that year Reutter earned $29,642. After Carlson died in a snowmobile accident in February 1999, Reutter adopted her daughter Jae and applied for child's insurance benefits for both children.

The Social Security Administration (SSA) awarded benefits for Jae Carlson, but denied the claim for Destiny. Reutter requested a hearing before an ALJ where he argued that Destiny had been dependent on Carlson for more than one half of her support and was therefore a dependent child within the meaning of 42 U.S.C. § 402(d)(4). Although Carlson had contributed much less income to Destiny's support in 1998 than he had, Reutter argued that she had performed most of the child

care and household chores, including cooking, cleaning, grocery shopping, and gardening. He initially estimated that these services were worth $20 per hour, but he later withdrew that figure when challenged as to its basis. Reutter also reported that prior to Carlson's death the couple had discussed the possibility of adopting one another's children and had asked attorneys for information about adoption. He argued to the SSA that Carlson had equitably adopted Destiny under North Dakota law, making her eligible for benefits for this reason as well.

The ALJ denied the claim. He applied the SSA's longstanding interpretation that the regulations do not permit the inclusion of homemaking services in determining a support contribution. The ALJ pooled the 1998 income contributions of the two spouses and found that Carlson had contributed less than half of Destiny's support in the 12 months prior to her death. The ALJ also concluded that Carlson had not equitably adopted Destiny, noting that the couple had taken no steps to initiate formal adoption proceedings or to terminate the parental rights of Destiny's birth mother who still exercised visitation rights once or twice each year. The ALJ determined that Destiny was thus ineligible for benefits. Reutter sought judicial review in the district court where he also raised an equal protection claim.

The district court ruled in Reutter's favor after observing that the SSA's pooled-fund method

> . . . looks solely at the financial contribution of the parents as determined by their income tax returns. This method ignores in its entirety any in-kind service(s) provided to the child despite the fact that the regulations recognize that 'a contribution may be in cash, goods or services.' 20 C.F.R. § 404.366(b).

Reutter ex rel. Reutter v. Barnhart, 255 F. Supp. 2d 1013, 1017 (D. N.D. 2003). The court held that the ALJ had erred by not assigning a cash value to Carlson's homemaking services, that this conflicted with SSA regulations, and that there was substantial evidence to support a finding that Carlson's homemaking services were worth "at least $12,111." That figure combined with her earnings as an agronomist

equaled the amount contributed by Reutter, and the court found that Carlson had provided at least half of Destiny's support. The court concluded that Destiny was therefore eligible for benefits as a dependent stepchild within the meaning of 42 U.S.C. § 402(d)(4), and in the alternative that Destiny also qualified for child's insurance benefits because Carlson had equitably adopted her within the meaning of 20 C.F.R. § 404.359. The district court remanded for an award of benefits, and the Commissioner appeals.

On appeal, the Commissioner argues that the district court failed to give appropriate deference to the SSA's interpretation of its own regulation which excludes routine household tasks from consideration in determining whether a stepparent has supplied half of a child's support. Even if the regulations did require consideration of household work, the Commissioner argues that here there was no factual basis in the record for the district court's assumption that the value of Carlson's homemaking services was sufficient to help meet the 50% support requirement. At the very least the court should have remanded for development of the factual record on the extent and value of Carlson's services. The Commissioner also argues that there was substantial evidence in the record to support the ALJ's finding that Carlson had not equitably adopted Destiny.

We review de novo a district court's decision affirming or reversing a denial of social security benefits, and we will uphold the ALJ's decision if it is supported by substantial evidence. See Strongson v. Barnhart, 361 F.3d 1066, 1069-70 (8th Cir. 2004). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision. Id. at 1070. If substantial evidence supports the Commissioner's decision, we may not reverse even if we might have decided the case differently. Id. We review the ALJ's interpretations of the Social Security Act and regulations de novo, giving substantial deference to the Commissioner's reasonable interpretations of the Act. See Crane v.

Sullivan, 993 F.2d 1335, 1336 (8th Cir. 1993). We review constitutional claims de novo. See United States v. Gary, 341 F.3d 829, 835 (8th Cir. 2003).

The Social Security Act provides that a child is dependent upon a stepparent, and therefore entitled to benefits, if at the time of the stepparent's death the child "was receiving at least one-half support" from her. 42 U.S.C. § 402(d)(4). The statute does not define "support," but the implementing regulation provides that contributions to a child's support may be in "cash, goods, or services." 20 C.F.R. § 404.366(b). That regulation states that "[if] the insured provides services for you that would otherwise have to be paid for, the cash value of his or her services may be considered a contribution for your support. An example of this would be work the insured does to repair your home." 20 C.F.R. § 404.366(a)(1). Reutter argues the district court was correct in holding that the inclusion of "services" in 20 C.F.R. § 404.366 requires determination and consideration of the cash value of Carlson's homemaking and child care services in calculating her contribution to Destiny's support.

The Commissioner points to the SSA's longstanding position that "the support requirement in the law is based on an economic relationship" so it is generally necessary when determining support "to exclude personal services unless such services are purchased." SSR 60-23. The SSA's Programs Operations Manual System (POMS) includes a statement that "the support requirement is based on an economic relationship," and "personal services are not income unless such services are purchased." POMS RS 01301.030C.13. The agency thus interprets services not to include "routine household tasks ordinarily expected of members of the household; these tasks do not have a cash value in determining support." POMS RS 01301.060A. The Commissioner argues that the exclusion of routine household tasks is consistent with the regulation because such services, unlike the example of home repair, do not generally have to be purchased because they are most often provided without cost by a household member. See 20 C.F.R. § 404.366(a)(1). The

Commissioner notes that this interpretation is consistent with the 1996 amendments to the Social Security Act which were enacted to ensure that a stepchild be "dependent upon the stepparent for at least one-half of his or her _financial_ support" in order to be eligible. H. R. Rep. 104-379, at *14 (1995) (emphasis added).

An agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation," Auer v. Robbins, 519 U.S. 452, 461 (1997), and the POMS are entitled to respect as "publicly available operating instructions for processing Social Security claims." Washington State Dep't of Soc. & Health Serv. v. Guardianship Estate of Keffler, 537 U.S. 371, 385 (2003) (citing Skidmore v. Swift & Co., 323 U.S. 134, 139-40 (1944)). Under its interpretation the SSA does not consider the cash value of household services, even though today many families must pay others to provide child care, cooking, cleaning, grocery shopping, gardening, and transportation. These types of services are distinguished in the regulatory scheme from home repairs, 8 C.F.R. § 404.366(a)(1), as being occasional and typically provided without cost by members of the household.

In the present case no evidence was presented that such services were ever purchased for Destiny's support. There was also no evidence about the actual value of Carlson's services in support of Destiny or the equivalent value if it had been necessary to purchase them. On this record we cannot say that the SSA's interpretation of 8 C.F.R. § 404.366 is inconsistent with the regulation or plainly erroneous, and we are bound to defer to it. Cf. Holman v. U.S. R.R. Retirement Bd., 253 F.3d 975, 982 (7th Cir. 2001) (upholding identical regulatory interpretation as not inconsistent with § 404.366 or analogous Railroad Retirement Board regulation). We respectfully suggest, however, that Congress and the SSA consider whether this regulatory scheme accurately reflects the economic realities of modern family life. Services such as child care and cleaning are now frequently purchased in the market, making it possible to assign them a cash value. A stepparent might give up a highly

paid job to devote more time to necessary child rearing; such support would not be without financial value if there were a record that these services had previously been purchased or their market value were established. We conclude that on the record before it, the district court erred by not deferring to the SSA's interpretation of 20 C.F.R. § 404.366.

The Commissioner also argues that the district court erred in overturning the ALJ's finding that Carlson had not equitably adopted Destiny within the meaning of 20 C.F.R. § 404.359. Destiny would be eligible under this provision if Carlson had entered into an adoption agreement sufficient under North Dakota law to entitle her to an intestate share of Carlson's personal property. See 20 C.F.R. § 404.359. We must affirm the ALJ's finding if it is supported by substantial evidence, Strongson, 361 F.3d at 1069-70, but we review the district court's application of North Dakota law de novo, Koch Eng'g Co. v. Gibralter Cas. Co., 78 F.3d 1291, 1294 (8th Cir. 1996).

Equitable adoption under North Dakota law requires "clear, cogent, and convincing evidence" of a contract to adopt and "objective manifestations of a contractual assent." Johnson v. Johnson, 617 N.W.2d 97, 108 (N.D. 2000). Reutter had the burden of producing evidence of a contract to adopt. See Ceglowski v. Zachor, 102 F. Supp. 513, 517 (D. N.D. 1951), cited with approval in Johnson, 617 N.W. 2d at 108. The parents in Johnson had initiated formal adoption proceedings in both Kentucky and New Jersey but were transferred by the military before the formalities could be completed, and the child understood them to be her natural parents. The North Dakota Supreme Court held these facts were sufficient to remand for further consideration of whether an equitable adoption had occurred. Johnson, 617 N.W.2d at 107-09.

The only evidence Reutter produced to establish that Carlson had equitably adopted Destiny was his own unsupported claim that the two had discussed adoption and had requested information from lawyers about what was required. No formal adoption proceedings were ever initiated for Destiny, and no steps were taken to terminate the parental rights of her birth mother. While no issue was raised that a loving relationship did not exist between Carlson and Destiny, Reutter failed to produce "clear, cogent, and convincing evidence" of the existence of a contract to adopt Destiny. Id. at 108. The ALJ's finding that no equitable adoption occurred was supported by substantial evidence, and the district court erred in overturning it.

On his cross appeal Reutter contends that 42 U.S.C. § 402(d)(4) violates the equal protection component of the Fifth Amendment due process clause by discriminating against the stepchildren of women. Reutter points to census data which demonstrate that men continue to earn more money than women and to studies which show that women do more unpaid housework than men. See Katherine Silbaugh, Turning Labor into Love: Housework and the Law, 91 Nw. U. L. Rev. 1 (1996). Because female stepparents are likely to contribute less income and more uncompensated services, they are less likely than their male counterparts to be found to contribute more than half of a stepchild's support. The 50% support requirement in 42 U.S.C. § 402(d)(4) tends to disadvantage the stepchildren of women, Reutter argues, in violation of equal protection rights.

Since the Social Security Act and relevant regulations classify on the basis of support contribution rather than gender, the question is whether any adverse impact upon one gender reflects "invidious gender-based discrimination." Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 274 (1976) (upholding veteran hiring preference even though the majority of veterans are men). As Reutter states in his brief, "[t]he governmental objective in promulgating PL 104-121 was to make certain that a stepchild was actually dependent upon a stepparent to claim benefits." Appellee Br.

at 38-39.  This is not an invidiously discriminatory intent, and Reutter has not shown that the statute violates the equal protection component of the Fifth Amendment or that the district court erred in rejecting this claim.

Accordingly, we affirm the judgment of the district court rejecting Reutter's constitutional challenge, but we vacate that part of the judgment ordering the Social Security Administration to grant child's insurance benefits to Destiny Reutter.

_____