Serena D. SCHNIDER, Plaintiff,

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. 3:08–cv–40 RWP–TJS.**

United States District Court, S.D. Iowa, Davenport Division.

March 6, 2009.

Michael DePree, Bowman & DePree, Davenport, IA, for Plaintiff.

Christopher D. Hagen, U.S. Attorney's Office, Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Plaintiff, Serena D. Schnider, filed a Complaint in this Court on April 10, 2008, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed applications for benefits on July 9, 2004. Tr. at 59–63 & 223–27. Plaintiff, whose date of birth is February 25, 1978 (Tr. at 59), was 27 years old at the time of the hearing on January 11, 2006. Tr. at 250. After the applications were denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. The hearing was held before Administrative Law Judge George Gaffaney (ALJ). Tr. at 241–73. The ALJ issued a Notice Of Decision— Unfavorable on September 22, 2006. Tr. at 14–25. The Appeals Council declined to review the ALJ's decision on March 26, 2008. Tr. at 8–11. Thereafter, Plaintiff commenced this action.

At the first step of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 18, 2004, the alleged onset of disability date. Tr. at 19. At the second step, the ALJ found that Plaintiff's severe impairments are a major depressive disorder and a history of substance abuse. The ALJ found that Plaintiff's impairments did not qualify for benefits at the third step of the sequential evaluation. At the fourth step, the ALJ found Plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform only simple, routine tasks with occasional changes in the work setting and only occasional interaction with co-workers, supervisors, and the public.

Tr. at 20. Given that residual functional capacity, the ALJ found that Plaintiff is incapable of performing her past relevant work (Tr. at 23), but is capable of working at jobs such as Marker, mail clerk, and photocopy machine operator. Tr. at 24. The ALJ found that Plaintiff is not disabled and not entitled to the benefits for which she applied. Tr. at 25.

Plaintiff was admitted to Keokuk Area Hospital on June 24, and discharged on June 28, 2004. Plaintiff was admitted after attempting suicide by slashing her arm. Plaintiff reported having problems with her husband. On discharge, the diagnoses, on Axis I, were major depression, recurrent episodes; depressive disorder, not otherwise specified; history of polysubstance abuse, mostly marijuana and amphetamine; and marital problem. On Axis II, the diagnosis was personality disorder, not otherwise specified with the features of schizaffective, dependant, as well as borderline. The global assessment of functioning was noted to be "around 35." Tr. at 168. The discharge summary, as well as other hospital records, were signed by Satyan Kantamneni, M.D. Tr. at 169. Plaintiff saw Dr. Kantamneni in his office July 4, August 9, and November 4, 2004.

The doctor prescribed various combinations of medications. Tr. at 178–80.

On July 13, 2004, Disability Determination Services sent a request for information to Dove & Associates in Burlington, Iowa. Tr. at 181. In response, Gail Garwood, LMHC, wrote that Plaintiff had been seen at the clinic four times. Ms. Garwood stated that Plaintiff was struggling with the debilitating symptoms of depression, mania, and anxiety, and that the symptoms had reached a level where she agreed that Plaintiff was unable to work. Ms. Garwood wrote:

> Her present symptoms include very low energy, mood swings, excessive irritability, fatigue, diminished ability to make decisions or concentrate, excessive worry that she does not seem to be able to control and sleep disturbance. She also has agoraphobic tendencies because she gets nervous when dealing with people even if she knows them. These symptoms manifest certain behaviors, for instance because of her lack of energy or motivation and sleep disturbance she may stay in bed instead of getting up to go to work on time, employers don't seem to like when there (sic) employees show up late or no show often. She is irritable with the customers to the point that several have complained about her to management. When she gets very stressed out and anxious there is a fear that her symptoms will progress to using drugs or suicidal ideation the last reported attempt was July 7, 2004. When she is very depressed, she does not care if things need to be done, she does not do them and does not worry about the consequences.

Tr. at 182.

A letter dated August 18, 2004, addressed to Disability Determination Services, from Diana R. McDowell, an outpatient counselor at Alcohol & Drug Dependency Services of Southeast Iowa, states that there was no evidence to indicate that Plaintiff was drinking alcohol or using drugs. The counselor went on to write that Plaintiff has "some trouble with dealing with situations in which she has to try to comprehend more than one thing at a time." Plaintiff's treatment had begun on July 2, 2004, after a referral from the Keokuk Area Hospital. Tr. at 107.

On August 23, 2004, David A. Christiansen, Ph.D., a consultant for Disability Determination Services, opined that Plaintiff's affective disorders, personality disorders, and substance addiction disorders were severe but not expected to last 12 months. Tr. at 194. Dr. Christiansen opined that Plaintiff had marked difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace. Tr. at 204. He wrote: "... it is reasonable to expect that the claimant will be able to function at an unskilled job by one year from date of onset, or 05–18–2005." Tr. at 210. On January 3, 2005, Beverly Westra, Ph.D. wrote that Dr. Christiansen's opinion was affirmed as written. Tr. at 211. Plaintiff's request for reconsideration of the initial denial was denied on January 11, 2005. In this notice, it was explained that the claim was denied because it was not expected that Plaintiff would be unable to work for the required 12 continuous months. Tr. at 44. In the initial denial, it was stated: "Although you are unable to work at the present time, it is expected that by 05/2004, your condition will have improved enough that you will be able to return to work similar to your past work as a cashier as it is performed in the national economy." Tr. at 38. In the notice of reconsideration, dated January 11, 2005, Plaintiff was told that by May 2005, it was expected that while she would be unable to do her past work, she would be able to do a wide range of sim-

ple and routine work. Tr. at 44. At the initial and reconsideration stages, Dr. Christiansen and Dr. Westra considered the medical evidence obtained by Disability Determination Services up to and including that which was received from Dr. Kantamneni on December 28, 2004. Tr. at 44 and 38.

Plaintiff saw Dr. Kantamneni January 17, 2005, at which time the doctor adjusted Plaintiff's medication. Tr. at 212. On June 22, 2005, Plaintiff reported that she had difficulty with anxiety, depression and anger control. The doctor adjusted the medication. His Axis I diagnoses included major depression, recurrent episodes, and impulse control disorder, not otherwise specified. The doctor saw Plaintiff again on August 24, 2005. Tr. at 213. The doctor saw Plaintiff on September 26 and November 2, 2005. Tr. at 218.

On January 18, 2006, Dr. Kantamneni completed a mental residual functional capacity form. Tr. at 220–22. The doctor opined that Plaintiff has no useful ability to: Maintain regular attendance and be punctual within customary, usually strict, tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; and, carry out detailed instructions. Plaintiff's ability to function is seriously limited in these domains: remember work-like procedures; carry out very short and simple instructions; maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately

to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; and, use public transportation. The following domains were marked as being limited but satisfactory: understand and remember very short and simple instructions; ask simple questions or request assistance; and, accept instructions and respond appropriately to criticism from supervisors. None of the domains indicated that Plaintiff has more than satisfactory ability.

At the hearing, counsel read a statement that Plaintiff wrote shortly after making her application for benefits: "I get up, go to the bathroom, smoke a cigarette, go downstairs, turn on the TV, and sit on the couch all day. I only get up to eat and go to the bathroom. I also sleep a portion of the day." Plaintiff said the statement was still as true as when she wrote it. Tr. at 251. Plaintiff testified to three suicide attempts, one in 2004, one in 2003 when she jumped from a window and broke her foot, 2004 when she cut her arm, and in 2005 when she took too much Xanax[1]. Tr. at 252–53. Plaintiff said that she has not used drugs or alcohol since she began treatment in June of 2004.

After Plaintiff testified, the ALJ called Carma Mitchell to testify as a vocational expert. Tr. at 264. The ALJ asked some hypothetical questions:

The first on would limit work to just simple, routine, constant work, with occasional changes in routine work setting,

1. The Court is somewhat surprised that neither counsel nor the ALJ thought it was necessary to obtain some medical verification of the incidents in 2003 or 2005.

and occasional interaction with coworkers and with supervisors. And I'm going to add, based on the testimony, only occasional interaction with the public. With this residual functional capacity, could past relevant work be done?

The vocational expert testified that past relevant work would be precluded. Tr. at 266. The vocational expert said that there are unskilled jobs, such as those listed in the ALJ's decision, that can be performed given those limitations. The ALJ asked if any work could be done if a person would miss more than three days per month and unable to sustain an eight-hour work day. The vocational expert said such limitations would preclude competitive work. Tr. at 267–68.

In his decision, the ALJ rejected Dr. Kantamneni's opinion because: "[The] clinical records found at Exhibits 2F, 6F, and 8F do not support the opinions provided." The ALJ went on to write that while Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, her statements concerning the intensity, persistence and limiting effects was not "entirely credible." The ALJ wrote that Plaintiff's activities of watching television, reading, visiting with family, playing video games and playing with her two children, detracted from her credibility. Tr. at 22.

### DISCUSSION

■ We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel.*

*Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola [v. Astrue]*, 480 F.3d [885], 886 [(8th Cir.2007)]). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005). *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir.2008.) In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir.1975).

■ In the opinion of the Court, this case turns on a proper evaluation of Dr. Kantamneni's assessment of Plaintiff's ability to do work related activities. In *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir.1995), the Court wrote that the opinion of a treating physician controls if it "is well-supported by medically acceptable ... diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Quoting 20 C.F.R. § 404.1527(d)(2). In *Smallwood*, there was medical evidence which contradicted the opinion of the treating physician and it was proper for the ALJ to rely on the opinions of the other physicians.

In the case at bar, there is no reason to suspect that Dr. Kantamneni's opinion is not well-supported by medically acceptable

diagnostic techniques. Nor, is the doctor's opinion contradicted by anything in the record, including his own treatments notes. Although the ALJ states that the doctor's opinion is inconsistent with the treatment notes, he does not point to anything specific and the Court is unable to find anything which would indicate that the doctor's opinion is not reliable. Furthermore, the doctor's opinion is supported by the letter of the mental health clinician, Gail Garwood, who wrote that, among other symptoms, Plaintiff has agoraphobic tendencies, along with very low energy, mood swings, excessive irritability, fatigue, etc, etc.

Dr. Kantamneni's opinion is also consistent with the opinions of the two psychologists who reviewed the record which was available at the time of the initial and reconsideration determinations of Plaintiff's claim. Those doctors recognized that Plaintiff was disabled, but based on the information available to them they opined that she would improve within the first year after the onset. Later medical records demonstrated that Plaintiff's illness did not respond to medication as hoped.

The ALJ's rejection of Dr. Kantamneni's opinion on the basis of inconsistency is a thinly veiled attempt to circumvent the rule that an ALJ must not substitute his opinion of that of the physician. *Ness v. Sullivan,* 904 F.2d 432, 435 (8th Cir.1990) ("the ALJ ignored the law of this circuit, which states that the ALJ must not substitute his opinions of those of the physician.").

This is yet another case in which the ALJ should have heeded the admonition given by Judge Posner in *Wilder v. Chater,* 64 F.3d 335, 337 (7th Cir.1995): "Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it." If the ALJ had reason to question Dr. Kantamneni, he could have ordered a consultative examination, he could have questioned the doctor at a hearing, or he could have submitted written interrogatories. Simply dismissing the doctor's opinion out of hand in the absence of contrary evidence renders the ALJ's opinion unsupported by substantial evidence on the record as a whole.

The ALJ's assertion that Plaintiff's ability to watch television and care for her family somehow detracts from her testimony and demonstrates the ability to work, is also unpersuasive. Claimants of disability benefits need not be bed ridden or unable to do any kind of chores in order to qualify. *See, e.g. Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir.1990) ("We have stated previously, however, that " '[a]n applicant need not be completely bedridden or unable to perform any household chords to e considered disabled.' " *Ludden v.Bowen,* 888 F.2d 1246, 1248 (8th Cir.1989) (quoting *Easter v. Bowen,* 867 F.2d 1128, 1130 (8th Cir.1989))). A denial of a claim must be supported by substantial evidence on the record as a whole which shows the ability to work full time "... day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982)(en banc)." *Thomas v. Sullivan,* 876 F.2d 666, 669 (8th Cir.1989). In *Thomas,* Judge Richard S. Arnold went on to write:

> Substantial gainful activity means the performance of substantial services with reasonable regularity either in competitive or self-employment. *Markham v. Califano,* 601 F.2d 533, 534 (10th Cir. 1979). The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.

*Id.*

In the case *sub judice,* Plaintiff has proven her case with medical evidence.

The ALJ's decision is not supported by substantial evidence on the record as a whole. Under such circumstances there is no need to remand for any reason other than to calculate the benefits to which Plaintiff is entitled. *Thomas, supra* at 670.

## CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D. Arkansas 1987). A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is entitled.

The final decision of the Commissioner is reversed and the Commissioner is ordered to award Plaintiff the benefits to which she is entitled.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b) [2]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

2. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."